**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WADE HAMMOND, individually, and on behalf of all others similarly situated, | JURY TRIAL DEMANDED |
| Plaintiff, | CASE NO. 1:18-cv-02092 |
| v, | |
| ATLANTIC CREDIT & FINANCE, INC., | |
| Defendant. | |

### CLASS ACTION COMPLAINT

NOW COMES Plaintiff WADE HAMMOND ("Plaintiff"), individually, and on behalf of all others similarly situated, through attorney James C. Vlahakis, asserts a putative Class Action Complaint against Defendant ATLANTIC CREDIT & FINANCE, INC. ("Defendant") for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA") and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/10a ("ICFA") and in support states:

### PARTIES, JURISDICTION AND VENUE

1.      Plaintiff is an adult person residing in the Northern District of Illinois.

2.      Plaintiff is a "consumer" as defined by § 1692a(3) of the FDCPA.

3.      Plaintiff is a "person" as that term is defined and/or used within the ICFA.

4.      Defendant is a Virginia corporation in the business of collecting consumer debts on behalf of others within the State of Illinois and throughout the United States.

5.      Defendant regularly uses the mail and/or the telephone to collect or attempt to collect delinquent consumer accounts.

1

6.   In the attached collection letter, Defendant identifies itself as a "debt collector."

7.   Defendant is a "debt collector" as defined by § 1692a(6) of the FDCPA.

8.   Defendant is a "person" as defined and/or used within the ICFA.

9.   This civil action arises under and is brought pursuant to the FDCPA.

10.   Subject matter jurisdiction is therefore conferred upon this Court by 15 U.S.C § 1692k and 28 U.S.C. §§ 1331, 1337, as the action arises under the laws of the United States.

11.   Supplemental jurisdiction for the ICFA claim by way of 28 U.S.C. § 1367.

12.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Defendant transacts business in the Northern District of Illinois.

13.   Additionally, the events and/or omissions giving rise to the claims made herein occurred within the Northern District of Illinois.

**FACTUAL ALLEGATIONS RELATED TO NOVEMBER 3, 2017 LETTER**

14.   Defendant mailed a "PRE-LEGAL NOTIFICATION" letter to Plaintiff on November 3, 2017. *See **Exhibit A*** (the "November 3rd Collection Letter").

15.   The November 3rd Collection Letter identifies Midland Funding LLC as the "Current Owner" (hereinafter "Midland").

16.   The November 3rd Collection Letter identifies Defendant as the "Current Servicer."

17.   The November 3rd Collection letter identifies COMENITY BANK TOTAL REWARDS VISA CARD as the "Original Creditor."

18.   Near the top of the November 3rd Collection Letter is the phrase "**PRE-LEGAL NOTIFICATION**" in bold and all caps.

19.   The phrase "**PRE-LEGAL NOTIFICATION**" is typed in large font.

2

20.    The phrase "**PRE-LEGAL NOTIFICATION**" is typed in the largest font of any words on the face of the letter, other than "**Atlantic**."

21.    Just above the phrase "**PRE-LEGAL NOTIFICATION**", the November 3rd Collection Letter includes a box which states "Reply by calling our office at: 800-888-9419 by 11/10/2017."

22.    November 3, 2017, was a Friday.

23.    November 10, 2017, was a Friday and a holiday, Veterans Day (observed by the United States Post Office on Saturday, November 11, 2017).

24.    The second sentence of the November 3rd Collection Letter said, "[t]his letter is to inform you that Midland Funding, LLC is considering forwarding this account to an attorney in your state for possible litigation."

25.    The third sentence of the November 3rd Collection Letter said, "[u]pon receipt of this notice, please call 800-888-9419 to discuss your options."

26.    The fourth sentence of the November 3rd Collection Letter said, "[i]f we don't hear from you or receive payment, Midland Funding, LLC may proceed with forwarding this account to an attorney."

27.    The November 3rd Collection Letter violates the FDCPA because the above quoted language invokes a false sense of urgency regarding threatened litigation.

28.    The November 3rd Collection Letter demanded immediate payment from Plaintiff and threatened Plaintiff with imminent legal action if Plaintiff did not pay.

29.    The time-frame set forth by the November 3rd Collection Letter gave Plaintiff no more than five (5) business days to respond to Defendant's **"PRE-LEGAL NOTIFICATION"**, assuming, for the sake of argument only (and not as a factual allegation), that Plaintiff received the letter on Monday, November 6, 2017.

30. Given publicized delays in Chicagoland based mail, and the Veterans Day holiday, it is plausible that the November 3rd Collection Letter did not arrive on Monday, November 6, 2017.[1]

31. The time-frame set forth by Defendant's **"PRE-LEGAL NOTIFICATION"** and so-called "one time repayment amount" was abusive, unfair, unconscionable oppressive and harassing in nature.

32. The short time-frame set forth by Defendant's so-called **"PRE-LEGAL NOTIFICATION"** and so-called "one time repayment amount" was calculated with the intention of being was abusive, unfair, unconscionable oppressive and/or harassing in nature to consumers so as to induce consumers to comply with Defendant's so-called "one time repayment amount."

33. Plaintiff was materially misled by Defendant's November 3rd Collection Letter because the letter plausibly threatened real and/or immediate legal action against Plaintiff.

34. The November 3rd Collection Letter, on its face, and under the time period of its mailing, also created a false sense of urgency relative to "a one time repayment amount of $9,522.35 to be due on 11/10/2017."

35. Notwithstanding the inclusion of the phrase, "[w]e are not obligated to renew this offer," the November 3rd Collection Letter's "one time repayment amount", coupled with a false threat of "litigation", language urging Plaintiff to call Defendant "[u]pon receipt of this notice", a "[r]eply by" date of 11/10/2017, and a repayment "due

---

[1] The New York Times documented how the U.S. Postal Service took almost three weeks to deliver a certified letter from New York City to Chicago in the fall of 2017. See, https://www.nytimes.com/2017/11/10/nyregion/post-office-mail-delays-daca-applications.html

on" date of 11/10/2017, constitutes the creation of a false sense of urgency relative to the "one time repayment amount."

36.     Plaintiff was materially misled by Defendant's November 3rd Collection Letter because the letter plausibly created a false sense of urgency relative to the "one time repayment amount."

37.     While exhorting Plaintiff to make one of two payment options, the November 3rd Collection Letter states "[o]nce you have completely fulfilled one of the above payment arrangements you will be released of the obligation."

38.     The word "obligation" is not referenced in any portion of the November 3rd Collection Letter.

39.     Because Defendant provided two payment options, one for the full amount and one for a partial amount, it is plausible that the phrase "you will be released of the obligation" would confuse unsophisticated consumers like Plaintiff.

40.     The use of the word "obligation" in the November 3rd Collection Letter fails to explain to an unsophisticated consumer what will happen to the remainder of the debt if an unsophisticated consumer paid the "one time repayment amount."

41.     For example, it is plausible for an unsophisticated consumer to question whether the remainder of the debt would be sold to another creditor.

42.     Equally plausible is the belief than another debt collector could attempt to collect the remainder of the debt.

43.     Plaintiff was materially misled by Defendant's November 3rd Collection Letter because the phrase "[o]nce you have completely fulfilled one of the above payment arrangements you will be released of the obligation" was confusing.

44.     As a result of the resultant confusion, anxiety, physical stress and mental distress caused by the November 3rd Collection Letter, Plaintiff sought legal assistance

from Atlas Consumer Law to determine Plaintiff's rights under the law. In consulting with counsel via telephone, email and in person, Plaintiff has been diverted from other tasks and has incurred travel costs.

**FACTUAL ALLEGATIONS RELATED TO NOVEMBER 10, 2017 LETTER**

45. Defendant mailed a collection letter to Plaintiff on November 10, 2017. *See* **_Exhibit B_** (the "November 10th Collection Letter").

46. In part, the November 10th Collection Letter listed a balance of $13,603.37.

47. The first sentence of the November 10th Collection Letter said, "Atlantic Credit & Finance would like to offer you the following arrangement in order to resolve your account:" and the second sentence said, "[p]lease see reverse side for payment arrangement."

48. The reverse side of the November 10th Collection Letter said, "...your payment schedule will be as follows: . . . This arrangement contains 119 payments totaling $13,603.37 to be paid between 11/15/17 and 09/15/27."

49. November 10, 2017, was a Friday, Veterans Day.

50. November 15, 2017, the first purported payment date, was a Wednesday.

51. The time-frame set forth by the November 10th Collection Letter gave Plaintiff no more than three (3) business days to dispute the so-called "arrangement" or agree to the so-called "arrangement" by submitting a payment by the stated due date, assuming, for the sake of argument only (and not factual allegation), that Plaintiff received the letter on Monday, November 13, 2017.

52. Given reported delays in Chicagoland based mail (see footnote 1), and the observance of Veterans Day, it is plausible that the November 10th Collection Letter did not arrive on Monday, November 13, 2017.

53.   The time-frame set forth by Defendant's so-called "arrangement" was abusive, unfair, unconscionable, oppressive and harassing in nature.

54.   The short time-frame set forth by Defendant's so-called "arrangement" was calculated with the intention of being abusive, unfair, unconscionable, oppressive and/or harassing to consumers so as to induce consumers to comply with Defendant's so-called "arrangement."

55.   The third sentence of the November 10th Collection Letter said, "[o]nce you have completely fulfilled your payment arrangement you will be released of the obligation."

56.   The fourth sentence of the November 10th Collection Letter said, "[i]f this is not what you agreed to, please call your representative *right away* at 1-800-888-9419 to discuss the best possible alternative."  (Emphasis supplied).

57.   Plaintiff never "agreed" to the so-called "arrangement."

58.   The manner in which the so-called "arrangement" is identified on the November 10th Collection Letter is false and misleading because it suggests that Plaintiff had a discussion with a collection agent employed by Defendant when, in fact, Plaintiff never spoke with a collection agent and never "agreed" to the so-called "arrangement."

59.   The conclusion of the November 10th Collection Letter lists office hours of "8:30 A.M. to 9 P.M. EST MONDAY – WEDNESDAY, 8:30 A.M. to 5:30 P.M. EST THURSDAY AND 9 A.M. TO 5 P.M. ON FRIDAY."

60.   Plaintiff resides in the Central Time Zone.

61.   For a person living in the Central Time Zone, Defendant's office hours would be: 7:30 A.M. to 8 P.M. CST MONDAY – WEDNESDAY, 7:30 A.M. to 4:30 P.M. CST THURSDAY AND 8 A.M. TO 4 P.M. ON FRIDAY."

62.     The manner in which the so-called "arrangement" is identified on the November 10th Collection Letter and the time-frame in which to contact Defendant "right away" to dispute having "agreed" to the so-called "arrangement" is abusive, unfair, unconscionable, oppressive and/or harassing because the time-frame to dispute the short, less than five (5) business days, assuming for the sake of argument only (and not as a factual allegation), that the letter was received by Plaintiff on Monday, November 13, 2017.

63.     The manner in which the so-called "arrangement" is identified on the November 10th Collection Letter and the time-frame in which to contact Defendant "right away" to dispute having "agreed" to the so-called "arrangement" is abusive, unfair, unconscionable, oppressive and/or harassing.

64.     It was also abusive, unfair, unconscionable, oppressive and/or harassing for Defendant to send out this form letter, which falsely referenced a purported "arrangement", where Defendant does not provide a manner for consumers to dispute the so-called "arrangement" other than the time periods identified above.

65.     The above time-periods discriminate against consumers who are unable to place calls during traditional "9 to 5" working hours.

66.     The above time-periods discriminate against consumers who sleep during the day because they work "third-shift."

67.     Further, the November 10th Collection Letter does not identify an email-based method of contact.

68.     As a result of the so-called "agreement" contained the November 10th Collection Letter, and the resultant confusion, anxiety, physical stress and mental distress caused by the short time-frame to dispute the so-called "agreement", Plaintiff sought legal assistance from Atlas Consumer Law to determine Plaintiff's rights under

the law. In consulting with counsel via telephone, email and in person, Plaintiff has been diverted from other tasks and has incurred travel costs.

**FACTUAL ALLEGATIONS RELATED TO NOVEMBER 14, 2017 LETTER**

69.     Defendant mailed a collection letter to Plaintiff on November 14, 2017.  *See* **_Exhibit C_** (the "November 14th Collection Letter").

70.     In part, the November 14th Collection Letter listed a balance of $13,603.37.

71.     The first sentence of the November 14th Collection Letter said, "[t]his letter is to once again information you that the above referenced account has been placed with Atlantic Credit & Finance"; and the second sentence said, "[w]e would like to offer you the arrangement listed on the reverse side of this letter in order to resolve your account."

72.     The reverse side of the November 14th Collection Letter said "[w]e would like to offer the following payment arrangement: . . . This arrangement contains 100 payments totaling $10,822.70 to be paid between 11/14/17 and 02/28/26."

73.     November 14, 2017, was a Tuesday.

74.     November 14, 2017, was the first purported payment date, the same date as the November 14th Collection Letter.

75.     The fourth sentence of the November 14th Collection Letter said, "[i]f this is not what you agreed to, please call your representative *right away* at 1-800-888-9419 to discuss the best possible alternative."  (Emphasis supplied).

76.     The time-frame set forth by the November 14th Collection Letter gave Plaintiff no time to dispute the so-called "arrangement" or agree to the so-called "arrangement" by submitting a payment by the stated due date.

77.     It is implausible that the November 14th Collection Letter was sent and received on the same date - November 14, 2017.

78.     November 14, 2017, was a Tuesday.

9

79. Given reported delays in Chicagoland based mail (see footnote 1), it is plausible that the November 14th Collection Letter could have been delivered on or about Friday, November 17, 2017 or on about Monday, November 20, 2017.

80. Both dates are after the deadline for the first payment of the so-called "arrangement."

81. The time-frame to comply with the so-called "arrangement" set forth in the November 14th Collection Letter was abusive, unfair, unconscionable, oppressive and harassing in nature.

82. The short time-frame set forth by Defendant's so-called "arrangement" was calculated with the intention of being abusive, unfair, unconscionable, oppressive and/or harassing to consumers so as to induce consumers to comply with Defendant's so-called "arrangement."

83. The third sentence of the November 10th Collection Letter said, "[o]nce you have completely fulfilled your payment arrangement you will be released of the obligation."

84. The fourth sentence of the November 14th Collection Letter said, "[i]f this is not what you agreed to, please call your representative right away at 1-800-888-9419 to discuss the best possible alternative."

85. Plaintiff never "agreed" to the so-called "arrangement."

86. The manner in which the so-called "arrangement" is identified on the November 14th Collection Letter is false and misleading because it suggests that Plaintiff had a discussion with a collection agent employed by Defendant when, in fact, Plaintiff never spoke with a collection agent and "agreed" to the so-called "arrangement."

87.     The conclusion of the November 14th Collection Letter lists office hours of "8:30 A.M. to 9 P.M. EST MONDAY – WEDNESDAY, 8:30 A.M. to 5:30 P.M. EST THURSDAY AND 9 A.M. TO 5 P.M. ON FRIDAY."

88.     Plaintiff resides in the Central Time Zone.

89.     For a person living in the Central Time Zone, Defendant's office hours would be: 7:30 A.M. to 8 P.M. CST MONDAY – WEDNESDAY, 7:30 A.M. to 4:30 P.M. CST THURSDAY AND 8 A.M. TO 4 P.M. ON FRIDAY."

90.     The manner in which the so-called "arrangement" is identified on the November 14th Collection Letter and the time-frame in which to contact Defendant "right away" to dispute having "agreed" to the so-called "arrangement" is abusive, unfair, unconscionable, oppressive and/or harassing.

91.     It was also abusive, unfair, unconscionable, oppressive and/or harassing for Defendant to send out this form letter, which falsely referenced a purported "arrangement", where Defendant does not provide a manner for consumers to dispute the so-called "arrangement" other than the time periods identified above.

92.     The above time-periods discriminate against consumers who are unable to place calls during traditional "9 to 5" working hours.

93.     The above time-periods discriminate against consumers who sleep during the day because they work "third-shift."

94.     Further, the November 14th Collection Letter does not identify an email-based method of contact.

95.     As a result of the so-called "agreement" contained the November 14th Collection Letter, and the resultant confusion, anxiety, physical stress and mental distress caused by the short time-frame to dispute the so-called "agreement", Plaintiff sought legal assistance from Atlas Consumer Law to determine Plaintiff's rights under

the law. In consulting with counsel via telephone, email and in person, Plaintiff has been diverted from other tasks and has incurred travel costs.

## COUNT I

### Individual Claims for Violations Sections 1692d, e, e(5), e(10) and f of the FDCPA

96. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

97. Section 1692d of FDCPA states, in relevant part: "[a] debt collector may not engage in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of any debt."

98. Section 1692e of FDCPA states, in relevant part: "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of Section 1692e of FDCPA:

   a. Defendant purposefully drafted the November 3, 2017 letter in such a way as to threaten legal action if Plaintiff did not contact Defendant and/or pay the one-time repayment amount within five business days, which neither Defendant nor Midland intended to take in November of 2017.

   b. Defendant's November 10th and November 14th Collection Letters, with the delivery dates and short timing deadlines, were purposefully drafted to falsely indicate that a payment arrangement had been agreed to between Defendant and Plaintiff, which constituted a false and deceptive representation and means of attempting to collect the subject debt.

99. Section 1692e(5) of FDCPA prohibits a debt collector from "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken."

100.    Section 1692e(5) is designed to prevent "empty threats of litigation as a means of scaring the debtor into payment." *Jenkins v. Union Corp.*, 999 F. Supp. 1120 (N.D. Ill. 1998).

101.    The court in *Samples v. Midland Credit Mgmt.*, 2012 U.S.Dist. LEXIS 91865 (Md. Tenn. July 2, 2012) reviewed language similar to the complained of language in the November 3rd Collection Letter and *denied* a motion to dismiss and FDCPA claim brought pursuant to Section 1692e(5)

102.    According to the court:

> Having examined the language of MCM Collection Letter, the court finds that, although it is a close question, the letter could be subject to more than one reasonable interpretation for purposes of § 1692e(5). The letter invokes the possibility of forwarding the matter to an attorney several times, presumably in an effort to encourage Samples to pay the alleged debt promptly. The letter states that MCM itself is "considering forward this account to an attorney in your state for possible litigation," which reasonably could be susceptible to a belief by the least sophisticated consumer that the letter threatens legal proceedings in the event of non-payment within the 30-day window set forth therein.

> \* \* \*

> This court's interpretation is consistent with the reasoning of the Sixth Circuit decision in *Kistner*, the Third Circuit decision in Brown that the Sixth Circuit cited approvingly in *Kistner*, and the FTC Staff Commentary, which the court finds persuasive under the circumstances presented here. *See* also *Rivera v. Amalgamated Debt Collection Servs., Inc.*, 462 F. Supp. 2d 1223, 1230 (S.D. Fla. 2006) [\*42] (rejecting defendant's argument that use of term "consider" in challenged language showed that legal action was not imminent, because, "where parties reasonably disagree about the language in debt collection letters, the trier of fact must resolve the disagreement rather than the court") (citing *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985)).

> Thus, interpreting the alleged facts in the light most favorable to MCM, the court finds that the MCM Collection Letter could be subject to more than one reasonable interpretation, including a threat of potential legal action, which could constitute a violation of § 1692e(5), if the defendants did not actually intend to take that threatened action.

*Samples*, 2012 U.S.Dist. LEXIS 91865 at *41-*42.

103.   Section 1692e(10) of FDCPA prohibits a debt collector from "us[ing] any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

104.   Section 1692f of the FDCPA states that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

105.   As an experienced debt collector, Defendant knows that its representations to consumers concerning their rights under the FDCPA are required to be truthful, complete and accurate, and disclosed without any intent to mislead or deceive.

106.   As set forth above, in relation to the November 3rd Collection Letter, Defendant violated §§ 1692d, e, e(5), e(10) and f by sending the Collection Letter, "Pre-Legal Notification," to Plaintiff which can be plausibly read to falsely threaten legal action if Plaintiff did not pay the Subject Debt.

107.   Defendant's November 3rd Collection Letter constitutes an abusive, deceptive and unfair means in connection with its collection of the Subject Debt.

108.   As an experienced debt collection agency, Defendant knows that threats of legal action are taken serious by a majority of consumers.

109.   Defendant violated §§ 1692e, e(5), e(10) and f of the FDCPA by threatening legal actions that it did not intend to take.

110.   Knowing this, Defendant purposefully chose to draft the letter in such a way as to threaten legal action which neither Defendant nor Midland intended to take in November of 2017.

111.   In doing so, Defendant used unfair, false, deceptive and misleading representations in connection with its collection efforts of the Subject Debt.

112.   To date, Defendant and Midland have not filed suit.

113.    If Midland files suit after this civil action is filed, its motives will be questionable.

114.    The November 10th and November 14th Collection Letters violated § 1692d of the FDCPA because as set forth above, the delivery dates, short timing deadlines and wording of these letters (which falsely indicated that a payment arrangement had been agreed to between Defendant and Plaintiff) constituted conduct that was harassing, oppressive and/or abusive.

115.    The November 10th and November 14th Collection Letters violated §§ 1692e and e(10) of the FDCPA because as set forth above, the delivery dates, short timing deadlines and wording of these letters (which falsely indicated that a payment arrangement had been agreed to between Defendant and Plaintiff) constituted a false and deceptive representation and means of attempting to collect the subject debt.

116.    The November 10th and November 14th Collection Letters violated § 1692f of the FDCPA because as set forth above, the delivery dates, short timing deadlines and wording of these letters (which falsely indicated that a payment arrangement had been agreed to between Defendant and Plaintiff) constituted unfair and/or unconscionable means of attempting to collect the subject debt.

117.    Pursuant to 15 U.S.C. § 1692k, Plaintiff is entitled to statutory damages, attorneys' fees and costs.

WHEREFORE, Plaintiff, individually, requests that this Honorable Court:

a.  Declare that the Collection Letter violates the FDCPA;

b.  Enjoin Defendant from sending collection letters which contain the subject language;

c.  Award each class member up to $1,000 in statutory damages;

d. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

e. Award Plaintiff any other relief this Honorable Court deems equitable and just.

**COUNT II**

**Class Based Claims for Violations 1692d, e, e(5), e(10) and f of the FDCPA**

118.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

119.    Defendant sent the subject Collection Letters to more than 40 consumers living in the United States.

120.    As set forth in the preceding Count, the subject Collection Letters violate Sections 1692d, 1692e(5), 1692e(10)and 1692f the FDCPA.

121.    Pursuant to 15 U.S.C. § 1692k, Plaintiff and the Class are entitled to statutory damages, attorneys' fees and costs.

122.    The proposed class consists of all consumers who, one year prior to the filing of this civil action, were sent letters by Defendant that are substantially familiar to the subject Collection Letters.

WHEREFORE, Plaintiff, individually and on behalf of a proposed nationwide class of consumers, requests that this Honorable Court:

a. Declare that the Collection Letter violates the FDCPA;

b. Enjoin Defendant from sending collection letters which contain the subject language;

c. Award each class member up to $1,000 in statutory damages;

d. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k;

e.  Require Defendant to return any funds paid by class members who responded with payments after receiving the Collection Letter and/or the Collection Envelope; and

f.  Award Plaintiff and the proposed class member any other relief this Honorable Court deems equitable and just.

## COUNT III

### Individual Claims for Violations ICFA

123.  Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

124.  Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

125.  Defendant's collection activity on the Subject Debt constitutes "conduct of any trade or commerce" as that phrase is defined and/or used within the ICFA.

126.  The ICFA states, in relevant part: "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

127.  "Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper." 815 ILCS 505/10a.

128.   Defendant violated the ICFA, namely 815 ILCS 505/2, by engaging in unfair, abusive, and deceptive conduct in its transactions with Plaintiff by, threatening Plaintiff with imminent legal action for non-payment which neither Defendant nor Midland presently intended to take.

129.   Defendant intended that Plaintiff rely on its deceptive communications in order to procure immediate payment of the Subject Debt.

130.   Plaintiff has been required to obtain the services of legal counsel to understand Plaintiff's rights under the law, and thus, Plaintiff has been harmed and has suffered damages as a result of Defendant's unlawful collection practices as described herein.

131.   Plaintiff is therefore entitled to relief pursuant to 815 ILCS 505/10a.

132.   Defendant's actions as set forth in this complaint were malicious, willful and/or undertaken with such reckless disregard of Plaintiff's rights that malice may be inferred, subjecting Defendant to liability for punitive damages under the ICFA in such an amount to be proved at trial.

WHEREFORE, Plaintiff, individually, respectfully requests that this Court enter judgment in her favor as follows:

a.   Award Plaintiff actual damages, in such amounts as determined by the jury, as provided under 15 U.S.C. § 1692k and 815 ILCS 505/10a;

b.   Award Plaintiff statutory damages in the amount of $1,000.00, as provided under 15 U.S.C. § 1692k(a)(2)(A);

c.   Award Plaintiff punitive damages, in such amounts as determined by the jury, as provided under 815 ILCS 505/10a;

d.   Award Plaintiff the costs of this action and reasonable attorneys' fees, as provided under 15 U.S.C. § 1692k(a)(3) and 815 ILCS 505/10a; and

e.  Award Plaintiff such other and further relief as may be just and proper.

**COUNT IV**

**Class Action Based Claims for Violations ICFA**

133.  Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

134.  Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

135.  Defendant's collection activity on the Subject Debt constitutes "conduct of any trade or commerce" as that phrase is defined and/or used within the ICFA.

136.  The ICFA states, in relevant part: "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

137.  "Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper." 815 ILCS 505/10a.

138.  Defendant violated the ICFA, namely 815 ILCS 505/2, by engaging in unfair, abusive, and deceptive conduct in its transactions with Plaintiff by, threatening Plaintiff with imminent legal action for non-payment which neither Defendant nor Midland presently intended to take.

139.    Defendant intended that Plaintiff rely on its deceptive communications in order to procure immediate payment of the Subject Debt.

140.    Plaintiff has been required to obtain the services of legal counsel to understand Plaintiff's rights under the law, and thus, Plaintiff has been harmed and has suffered damages as a result of Defendant's unlawful collection practices as described herein.

141.    Plaintiff is therefore entitled to relief pursuant to 815 ILCS 505/10a.

142.    Defendant's actions as set forth in this complaint were malicious, willful and/or undertaken with such reckless disregard of Plaintiff's rights that malice may be inferred, subjecting Defendant to liability for punitive damages under the ICFA in such an amount to be proved at trial.

WHEREFORE, Plaintiff, individually, respectfully requests that this Court enter judgment in her favor as follows:

a.  Award Plaintiff actual damages, in such amounts as determined by the jury, as provided under 15 U.S.C. § 1692k and 815 ILCS 505/10a;

b.  Award Plaintiff statutory damages in the amount of $1,000.00, as provided under 15 U.S.C. § 1692k(a)(2)(A);

c.  Award Plaintiff punitive damages, in such amounts as determined by the jury, as provided under 815 ILCS 505/10a;

d.  Award Plaintiff the costs of this action and reasonable attorneys' fees, as provided under 15 U.S.C. § 1692k(a)(3) and 815 ILCS 505/10a; and

e.  Award Plaintiff such other and further relief as may be just and proper.

**THE ELEMENTS OF FRCP 23 ARE MET**

143.    The putative class members can be administratively ascertained from business records maintained by Defendant.    *See, e.g., In re Community Bank of Northern*

20

*Virginia Mortg. Lending Practices Litigation*, 795 F.3d 380, 397 (3d Cir. 2015) (finding that the Plaintiffs' proposed class was ascertainable because the defendant "possesse[d] all of the relevant bank records needed to identify the putative class members").

144. Excluded from the Classes is Defendant, its agents, subsidiaries, parents, successors, predecessors, and any entity in which those parties, or their parents have a controlling interest, and those entities' current and former employees, officers, and directors, (2) the Judge to whom this case is assigned and the Judge's immediate family and staff, (3) any person who executes and files a timely request for exclusion from the Class, (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded, adjudicated and/or otherwise released person.

145. Numerosity is satisfied because Defendant mailed at least 40 of the Subject Collection Letters to putative class members in the United States and Illinois.

146. Joinder of all members of the Class is impracticable.

147. The elements of is commonality and predominance are satisfied.

148. As to the TCPA based classes, commonality exists because Defendant(s) acted in a common manner toward Plaintiff and the proposed class members through the issuance of form Collection Letters to putative class members.

149. Plaintiff's and the proposed class members' claims all arise from the same operative facts (the same Collection Letters) and the same causes of action.

150. A class action is an appropriate method for the fair and efficient adjudication of this controversy, and superior to other available methods for the fair and efficient adjudication of this controversy.

151. The common questions of law and fact enumerated above predominate over questions affecting only individual Class members.

152. The likelihood that individual Class members will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, as well as the absence of a fee shifting mechanism.

153. The expense and burden of individual litigation would make it impracticable for proposed Class members to prosecute their claims individually.

154. Class Counsel and Plaintiff will fairly, adequately and vigorously represent and protect the interests of the proposed class members and has/have no interest antagonistic to those of the Class.

155. There are no defenses unique to Plaintiff.

156. Plaintiff's lead attorney (James C. Vlahakis) is an experienced consumer class action litigator who has defended over a hundred consumer-based claims since 1998 and has litigated over four dozen TCPA based putative class actions.

157. In conjunction with class counsel, Mr. Vlahakis has obtained Court approval of numerous TCPA class actions. *See, e.g., In Re Capital One Telephone Consumer Protection Act Litigation*, 2012-cv-10064 (N.D. Ill.) ($75 million dollar TCPA based automated dialing system settlement); *Prater v. Medicredit, Inc.*, 2014-cv-0159 ($6.3 million dollar TCPA based automated dialing system wrong party settlement); *INSPE Associates v. CSL BIotherapries, Inc.* (N.D. Ill.) ($3.5 million fax based settlement).

158. Additionally, Mr. Vlahakis (as a former consumer class action defense attorney) has gained court approval of several FDCPA class actions.

159. Vlahakis' co-counsel are experienced consumer rights attorneys.

160. FRCP 23(b)(2) provides that injunctive and declaratory relief are proper where "the party opposing the class has acted or refused to act on grounds that apply generally to the class."

161.    In summary, the above violations apply generally to the proposed classes. Accordingly, for the above reasons, this Court should declare Defendant's misconduct unlawful and enjoin Defendant from further violating the FDCPA and ICFA.

***Plaintiff demands a jury trial***

Respectfully submitted,

Plaintiff WADE HAMMOND individually
and on behalf of all others similarly situated,

By:   /s/James Vlahakis

James Vlahakis
Sᴜʟᴀɪᴍᴀɴ Lᴀᴡ Gʀᴏᴜᴘ, Lᴛᴅ.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
(630) 581-5456 telephone
jvlahakis@sulaimanlaw.com

*Additional counsel*
Ahmad T. Sulaiman ahmad.sulaiman@sulaimanlaw.com
Omar T. Sulaiman osulaiman@sulaimanlaw.com
Joseph Davidson jdavidson@sulaimanlaw.com